UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
GREENEVILLE DIVISION

| | | |
|---|---|---|
| KAREN GOODWIN, individually and on behalf of AUSTIN HUNTER TURNER, deceased, | ) ) ) ) | 2:24-CV-00146-DCLC-CRW |
| Plaintiff, | ) ) | |
| v. | ) ) | |
| CITY OF BRISTOL, TENNESSEE, et al., | ) | |
| Defendants. | | |

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on four motions to dismiss: Defendant Eric Keller's Motion to Dismiss [Doc. 69]; the Motion to Dismiss filed by Defendants Noah Cunningham, Jason Johnson, David McGlamery, Scott Shaffer, and Scott Wise [Doc. 73]; the Motion to Dismiss field by Defendants Gregory Brown, George Lewis, and Mike Still's Motion to Dismiss [Doc. 77], and the Motion to Dismiss filed by Defendants City of Bristol, Kevin Frederick, and John Kistner [Doc. 79]. Plaintiff has filed a consolidated response in opposition [Doc. 85], and Defendants have replied [Docs. 86, 92, 94, 95]. For these reasons, all four motions to dismiss are **GRANTED**.

## I. BACKGROUND

On the night of August 29, 2017, Austin Hunter Turner was at his home in Bristol, Tennessee when he began convulsing from a seizure. [Second Amended Complaint, Doc. 65, at ¶ 45]. His girlfriend, Michelle Stowers, witnessed the seizure and called 911. [*Id.* ¶ 46]. Turner's mother, Plaintiff Karen Goodwin, was also present. [*Id.* ¶ 59]. Minutes later, Defendants David McGlamery, Noah Cunningham, Scott Wise, Scott Shaffer and Jason Johnson (the "Paramedic Defendants" or the "Paramedics") arrived to provide medical assistance. [*Id.* ¶ 48]. Turner was

in a postictal state and began "fighting with [the Paramedics]." [*Id.* ¶ 50; Doc. 65-4, pg. 2]. They called for the police to assist. [*Id.*; *see* Doc. 65 at ¶ 49]. At some point thereafter, Defendants Gregory Brown, Kevin Frederick, Eric Keller, George Lewis, John Kistner, and Mike Still, all officers with the Bristol Police Department, arrived at the scene. [*Id.*]. These events of that night were captured on Keller and Frederick's body cameras, which were incorporated into Plaintiff's Second Amended Complaint as Exhibits C and D.

The officers helped restrain Turner. When the officers arrived, Turner was held in place by several paramedics. [Doc. 65, Ex. C at 2:32]. One paramedic stated that he had Turner's arm, and Turner was warned twice that he would be tased if he did not stop struggling. [*Id.* at 2:39-2:56]. Turner continued to fight, and he was tased. [*Id.* at 3:00-3:04]. The officers and paramedics continued to struggle to restrain him while the paramedics provided medical care. [*Id.* at 3:05-8:00]. Eventually he was handcuffed, and his legs were shackled. [*Id.* at 4:54, 7:18, 8:14-8:25].

When Defendants wanted to move him to the ambulance, they placed him face down on a cot and pulled a spit sock over his head. [Doc. 65, Ex. D at 8:11-8:51]. Turner was taken outside while strapped down with his hands and feet restrained and placed in the back of the ambulance. [*Id.* at 12:38-12:45]. A few minutes after Turner was loaded into the ambulance, one of the paramedics noticed that Turner stopped breathing. [Doc. 65, Ex. C at 17:15]. They removed his restraints, rolled him onto his back, and began CPR and other life-saving measures. [*Id.* at 17:20-28:11].

Turner was transported to Bristol Regional Medical Center where he was pronounced dead at 12:52 a.m. [Doc. 65 at ¶ 51]. An autopsy performed the following day concluded that the immediate cause of Turner's death was multiple drug toxicity as a consequence of recreational drug use. [*Id.* ¶ 52].

2

On August 20, 2023, Plaintiff saw the officers' body camera footage after two Associated Press reporters showed her the videos, which they obtained as part of a nationwide investigation into deaths involving the use of "less-lethal force" by law enforcement. [*Id.* ¶ 57; Doc. 1 at ¶ 1]. Just under a year later, on August 14, 2024, Plaintiff filed her original Complaint. In the pending motions, each set of Defendants argues that they are entitled to dismissal because Plaintiff's claims, filed nearly seven years after the night of Turner's death, are time-barred by the statute of limitations.

## II. LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss for failure to state a claim, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

When considering a motion to dismiss, the court may consider the complaint and its exhibits, public records, items appearing in the record of the case, and documents incorporated by reference into the complaint and central to the claims. *Barany–Snyder v. Weiner*, 539 F.3d 327, 332 (6th Cir. 2008). The court must view the complaint in the light most favorable to the nonmoving party, accepting as true all well-pleaded factual allegations and drawing all reasonable inferences in the nonmoving party's favor. *Meador v. Cabinet for Human Res.*, 902 F.2d 474, 475 (6th Cir. 1990). But when the Court is presented with video evidence, the Court should view "the facts in the light depicted by the videotape." *Scott v. Harris*, 550 U.S. 372, 381 (2007).

"While a complaint need not plead the absence of an affirmative defense such as the statute of limitations, when the allegations in the complaint affirmatively show that the claim is time-

barred . . . dismissing the claim under Rule 12(b)(6) is appropriate." *Stein v. Regions Morgan Keegan Select High Income Fund, Inc.*, 821 F.3d 780, 786 (6th Cir. 2016) (internal quotations and citation omitted).

## III.   ANALYSIS

### A.  Section 1983 Claims

Section 1983 does not contain its own statute of limitations. Instead, federal courts borrow the limitations period from the most analogous state statute governing personal injury actions in the state where the suit is filed. *Reguli v. Russ*, 109 F.4th 874, 879 (6th Cir. 2024) (per curiam). Two Tennessee statutes are closely analogous here. First, Tennessee's general statute of limitations for personal injury actions provides a one-year limitations period. Tenn. Code Ann. § 28-3-104. Second, the Tennessee Governmental Tort Liability Act ("TGTLA") also imposes a one-year limitations period for claims against governmental entities and their employees acting within the scope of their employment. Tenn. Code Ann. § 29-20-305(b).  Under either statute, Plaintiff's § 1983 claims are subject to a one-year statute of limitations.

Federal law then determines when the limitations period begins to run. *Wallace v. Kato*, 549 U.S. 384, 388 (2007).  Under the Supreme Court's "standard" accrual rule, a claim accrues when the plaintiff has "a complete and present cause of action." *Reguli*, 109 F.4th at 879 (quoting *Bay Area Laundry & Dry Cleaning Pension Tr. Fund v. Ferbar Corp. of Cal., Inc.*, 522 U.S. 192, 201 (1997)) (internal quotations omitted).  In other words, the clock starts when all the elements of the claim have occurred so the plaintiff can file suit.  *Id.*  In the Sixth Circuit, accrual occurs when the plaintiff "discover[s] or reasonably should have discovered basic facts about the claim." *Coleman v. Hamilton Cnty. Bd. of Cnty. Commissioners*, 130 F.4th 593, 602 (6th Cir. 2025).

In *Reguli*, the Sixth Circuit acknowledged that its precedents have sent "mixed messages" about what facts a plaintiff must know for a claim to accrue under the discovery rule. 109 F.4th at 882. Many earlier cases suggested that a claim accrues when the plaintiff "knows or has reason to know of the injury which is the basis of his action." *Id*. (citations omitted). Under that approach, an excessive-force claim may accrue on the day the force is used because the plaintiff is immediately aware of the injury, even if the plaintiff does not yet know the identity of the officer who inflicted it. *Id*.

Other cases have suggested that the limitations period does not start until a plaintiff knows or should know of "both his *injury* and the *cause* of that injury." *Id.* (quoting *Bishop v. Child.'s Ctr. for Developmental Enrichment*, 618 F.3d 533, 536 (6th Cir. 2010)). *Bishop* relied on *United States v. Kubrick*, in which the Supreme Court held, in the medical malpractice context, that a claim does not accrue until the plaintiff knows of both the injury and its cause. 444 U.S. 111 (1979).

The Sixth Circuit did not reconcile these two lines of authority, though it suggested that content of the discovery rule may vary depending on the type of claim at issue. *Reguli*, 109 F.4th at 883. Even so, the court made clear that, in the § 1983 context, a claim may accrue before the plaintiff knows every element of the claim. *Id*. As *Reguli* explained, the discovery rule begins to run once the plaintiff learns of an injury caused by the defendant's conduct, even if the plaintiff does not yet know the full extent of the injury. *Id*.

Plaintiff relies on the *Bishop* approach to argue that the statute of limitations did not begin to run until August 20, 2023. According to Plaintiff, she did not know the *cause* of Turner's injury until that date because she had not yet viewed the body camera footage. Although she was present

5

at Turner's home for the events of that night, she alleges that she was unaware that Turner had been handcuffed behind his back, that his ankles were shackled, that a spit sock covered his head, that he was forcibly secured to a cot, that he was tased, or that officers and paramedics placed their body weight on the back of his head and upper back. [Doc. 65 at ¶¶ 62-67].

On a motion to dismiss, the Court must view all well-pleaded allegations as true, except when video footage is available that would "blatantly contradict" and "utterly discredit" the Plaintiff's version of events. *Scott v. Harris*, 550 U.S. 372, 380-381 (2007). The body camera footage blatantly contradicts the allegations that Plaintiff was unaware of Defendants' various means of force against Turner.

When Defendant Keller arrived at Turner's home, Plaintiff, seen wearing a grey T-shirt, was standing directly in front of Turner as paramedics physically restrained him and gave medical care. [Doc. 65, Ex. C at 2:32]. Keller walked a few feet past Plaintiff to reach Turner. [*Id.* at 2:34-2:37]. As he did, Plaintiff said, "Hunter, stop," [*Id.* at 2:37], which she repeated a few seconds later. [*Id.* at 2:42]. Keller then warned Turner, "Stop it right now or you're gonna get tased if you keep it up. Do you understand me?" [*Id.* at 2:43-2:46]. Seconds later, he repeated the warning: "Stop it now or you're gonna' get tased." [*Id.* at 2:53]. Two seconds later, he said, "Alright, taser," [*Id.* at 2:55], and deployed the taser. [*Id.* at 3:01].

Though Plaintiff is not seen on camera when Turner was tased, the footage makes clear that she was standing only a few feet away. Keller's warning, the sound of the taser, and Turner's audible reaction would have been plainly perceptible to anyone in the room. The struggle continued for roughly another minute as officers and paramedics attempted to secure Turner in handcuffs. Keller repeatedly ordered Turner to put his hands behind his back. [*Id.* at 3:04-3:11]. Keller later announced "Alright, they're cuffed," [*Id.* at 4:54], followed by another officer

confirming "Yeah, he's cuffed." [*Id.* at 5:17]. Plaintiff appears briefly on the edge of the footage, within the room, a few seconds later, [*Id.* at 5:37], and is seen fully visible facing Turner and the officers and paramedics shortly after. [*Id.* at 6:12]. While she is present, someone asks, "Can we get the cot in here and put him belly down?" [*Id.* at 6:44].

The footage next shows Plaintiff outside after the paramedics moved Turner towards the ambulance. She got out of her car and walked towards Turner as he lay face down on the cot with a spit sock over his head and restraints on both his hands and feet. [*Id.* at 12:38-12:45]. Plaintiff stood beside him facing the cot. [*Id.* at 12:43-12:45]. She is also seen outside the ambulance looking inside while officers and paramedics applied pressure to Turner's head. [Doc. 65, Ex. D at 12:42-12:47]. She was also outside the ambulance door seconds after someone shut the door. [*Id.* at 13:39-13:50].

Based on these facts, the footage establishes that Plaintiff was present for and either saw or heard the key events giving rise to her claims. She observed or was close to Turner as officers restrained him, warned that he would be tased, deployed the taser, placed him in handcuffs, secured his legs, covered his head with a spit sock, and strapped him face-down onto a cot. Under the Supreme Court's standard accrual rule, Plaintiff' cause of action for her § 1983 claims accrued on August 30, 2017. The discovery rule does not alter this conclusion. Even under the more plaintiff-friendly formulation discussed in *Reguli*, Plaintiff discovered the pertinent facts about her excessive force and related claims at the time of their occurrence on August 30, 2017. Accordingly, the statute of limitation began to run on August 30, 2017.

Plaintiff alleges that the statute of limitations did not begin to run until after August 20, 2023, when she received a report from forensic pathologist Dr. Michael Baden concluding that Turner's death resulted from asphyxia caused by pressure applied to his head and back during

physical restraint.  According to Plaintiff, she did not previously know the cause of Turner's fatal injury.

This argument misunderstands the level of knowledge required to trigger accrual of the cause of action.  Although the Sixth Circuit in *Bishop* stated a claim may accrue when the plaintiff knows or should know of both the injury and its cause, more analogous precedent involving excessive force claims requires only knowledge of the injury itself.  *Reguli*, 109 F.4th at 882; *see Miller v. Cocke County*, 2022 WL 103143, at *2 (6th Cir. Jan. 11, 2022); *see also Ruiz-Bueno v. Maxim Healthcare Servs., Inc.*, 659 F. App'x 830, 834 (6th Cir. 2016); *Dowdy v. Prison Health Servs.*, 21 F. App'x 433, 434–35 (6th Cir. 2001) (order).  The Sixth Circuit made clear in *Reguli* that the statute of limitations begins to run even if the plaintiff "lacks knowledge of every element of the claim."  *Reguli*, 109 F.4th at 883.  Plaintiff knew of Turner's injury—his death—and that his death followed a long physical struggle with paramedics and police that she personally witnessed.  The "critical facts" that start the limitations period are "that [the plaintiff] has been hurt and who has inflicted the injury,'" *Kubrick*, 444 U.S. at 122, "not discovery of the other elements of a claim." *Rotella v. Wood*, 528 U.S. 549, 555 (2000); *see also Reguli*, 109 F.4th 874.

Plaintiff knew those critical facts on August 30, 2017. She personally witnessed the prolonged physical struggle between Turner and responding officers and paramedics. She observed or heard the use of force against Turner, including the deployment of a taser and the officers' efforts to restrain him. She also knew that Turner died following that encounter.  The later receipt of Dr. Baden's report identifying asphyxia as the precise physiological cause of death does not delay the accrual of the claim. The discovery rule does not postpone the statute of limitations until a plaintiff obtains expert confirmation of the exact medical mechanism of injury. Because Plaintiff knew of Turner's injury and the events giving rise to it on August 30, 2017, her

§ 1983 claims accrued on that date. Tennessee's one-year statute of limitations therefore expired on August 30, 2018—nearly six years before this action was filed. Plaintiff's § 1983 claims must therefore be dismissed for failure to state a claim.

**B. Loss of Consortium Claim**

Plaintiff also raises a claim for loss of consortium under Tennessee common law. Loss of consortium is similarly subject to a one-year statute of limitations, which accrues "on the date of injury or at the loss." *Dey v. Subaru of America, Inc.*, 635 F. Supp. 3d 620, 624 (E.D. Tenn. 2022) (quoting *Roberts v. Berry*, 541 F.2d 607, 610 (6th Cir. 1976)); Tenn. Code Ann. § 28-3-104.

Plaintiff's claim accrued on August 30, 2017, on the date Turner died. Thus, the limitations period ended on August 30, 2018. Plaintiff's loss of consortium claim is also time-barred and is dismissed for failure to state a claim. Because each of Plaintiff's claims are dismissed, the Court declines to consider the other arguments raised by Defendants in their motions to dismiss.

**IV. CONCLUSION**

For the reasons stated above, Defendants' Motions to Dismiss [Docs. 69, 73, 77, 79] are **GRANTED**.

A separate judgment shall enter.

**SO ORDERED:**

s/ Clifton L. Corker
United States District Judge

9